## N THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RONALD GAINES, )
)
        Plaintiff, ) Case No. 21-cv-5192
)
v. ) Hon. Judge Lindsay C. Jenkins
)
THOMAS J. DART, *et al.*, ) Mag. Judge Jeffrey T. Gilbert
)
        Defendants. )

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

Respectfully submitted,

RONALD GAINES

        */s/ Cass T. Casper*
By:_____
        Cass T. Casper, Esq.
        His Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com

N THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

RONALD GAINES,               )
                             )
        Plaintiff,           ) Case No. 21-cv-5192
                             )
v.                           )  Hon. Judge Lindsay C. Jenkins
                             )
THOMAS J. DART, *et al.*,     ) Mag. Judge Jeffrey T. Gilbert
                             )
        Defendants.          )

## TABLE OF CONTENTS

**STATEMENT OF FACTS**………………………………………………………………1

**LEGAL STANDARD**………………………………………………………………….5

**ARGUMENT**…………………………………………………………………………..6

   I.    **DEFENDANTS' RULE 56 STATEMENT CONTAINS CITATIONS TO
         MARCIA OVIEDO'S AFFIDAVIT THAT SHOULD BE STRICKEN**…………6

   II.   **PLAINTIFF'S COMPLAINT WAS TIMELY FILED**……………………………7

   III.  **PLAINTIFF'S ADEA/IHRA AGE DISCRIMINATION CLAIMS SURVIVE**….7

         a.   Gaines Met The CCSO's Legitimate Expectations…………………………………7

         b.   Gaines Was Subjected To A Material Adverse Action……………………………...8

         c.   Ruffin's Age-Based Statements And Pattern Of Targeting Older Workers…………8

         d.   Suspicious Timing Supports Plaintiff's Claims……………………………………12

         e.   Defendants' Comparator Arguments Fails Because Plaintiff Need Not Adduce
              Comparators To Prove Discrimination……………………………………………13

         f.   Morales is Ruffin's Cat's Paw……………………………………………………...14

         g.   Defendants' Claims About Stray Remarks And Lack Of Authority Fail…………...17

   IV.   **PLAINTIFF'S 1983 CLAIM AGAINST RUFFIN SURVIVE**……………………18

         a.   Plaintiff Meets His Burden………………………………………………………...18

         b.   Plaintiff Suffered A Constitutional Deprivation…………………………………...19

c. <u>Ruffin Is Not Protected By Qualified Immunity</u>…………………………………..19

**V.** **<u>COOK COUNTY IS NOT ENTITLED TO SUMMARY JUDGMENT</u>**………19

**<u>CONCLUSION</u>**………………………………………………………………………20

**<u>CERTIFICATE OF SERVICE</u>**………………………………………………………...20

N THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| RONALD GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-5192 |
| | ) | |
| v. | ) | Hon. Judge Lindsay C. Jenkins |
| | ) | |
| THOMAS J. DART, *et al.*, | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

## TABLE OF AUTHORITIES

Fed. R. Civ. P. 56(a)

*Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)

*Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017)

*American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 728 (7th Cir. 1986)

*Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016)

*Barton v. Zimmer*, 662 F.3d 448, 453-54 (7th Cir. 2011)

*Belour v. Adapt of Ill., Inc.*, 460 F.Supp.2d 867, 873 (N.D. Ill. 2006)

*Bullock v. Kelly Constr. of Indiana*, 18 CV 216, 2021 WL 534753, at *2 (N.D. Ind. Feb. 12, 2021)

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)

*Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060–61 (7th Cir.2003)

*Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012)

*Donohoe v. Corpak Medsystems, Inc.*, 17 C 3228, 2019 WL 414674, *1, FN 1 (N.D. Ill. Feb. 1, 2019)

*EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 117 (1988)

*EEOC v. RJB Props., Inc.*, 857 F. Supp. 2d 727, 739 (N.D. Ill. 2012)

*Garth v. City Of Chicago*, 2009 WL 3229627 *5 (N.D. Ill. Oct. 2, 2009)

*Giacoletto v. Amax Zinc Co.,* 954 F.2d 424 (7th Cir. 1992)

*Ghiles v. City of Chicago Heights*, 2018 WL 1377909 at *4

*Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1314–15 (7th Cir. 1989)

*Hu v. City of Chicago,* 2009 WL 635522 *2 (N.D. Ill. March 12, 2009)

*Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997)

*Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406 (7th Cir. 2007)

*Johnson v. Statewide Inv. Servs., Inc.*, No. 20 C 1514, 2021 WL 825653, at *10 (N.D. Ill. Mar. 4, 2021)

*Levin v. Madigan*, 692 F.3d 607, 620-21 (7th Cir. 2012)

*McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008)

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)

*Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999)

*Morgan v. SVT, LLC*, 724 F.3d 990, 995–96 (7th Cir. 2013)

*Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014)

*Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016)

*Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011)

*Principe v. Vill. of Melrose Park*, 2020 WL 4815908 at *7 (N.D. Ill. 2022)

*Riley v. Vilsack*, 665 F. Supp. 2d 994, 1004 (W.D. Wis. 2009)

*Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 383 (7th Cir. 2011)

*Segerdahl Corp. v. Ferruzza*, 17 C 3015, 2022 WL 21295383, at *2 (N.D. Ill. Sept. 20, 2022)

*Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1044–45 (7th Cir.1999)

*Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012)

*Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)

*Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998)

*Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994)

*Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *6 (N.D. Ill. Apr. 7, 2006)

*Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997)

*Webb v. Clyde L. Choate Mental Health and Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000)

*Wichmann v. Bd. of Trs. Of Southern Ill. Univ.*, 180 F.3d 791, 801 (7th Cir. 1999)

*Wightman v. Wauconda Twp. Hwy. Dep't*, 19-CV-2344, 2021 WL 534668, at *5 (N.D. Ill. Feb. 12, 2021)

*Wright v. Southland Corp.,* 187 F.3d 1287, 1290–92 (11th Cir. 1999)

*Wrolstad v. Cuna Mut. Ins. Soc.*, 911 F.3d 450, 455 (7th Cir. 2018)

*Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999)

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| RONALD GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 21-cv-5192 |
| | ) | |
| v. | ) | Hon. Judge Lindsay C. Jenkins |
| | ) | |
| THOMAS J. DART, *et al.*, | ) | Mag. Judge Jeffrey T. Gilbert |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO THE MOTION FOR SUMMARY JUDGMENT

RONALD GAINES (Gaines or Plaintiff), by undersigned counsel, Cass T. Casper, Esq.,

DISPARTI LAW GROUP, P.A., responds as follows in opposition to Defendants' Motion for

Summary Judgment (Dkt. 108-110) (Motion).

## STATEMENT OF FACTS

Plaintiff retired from the Chicago Police Department following an illustrious career starting

in 1976 and continued his public service at the Cook County Sheriff's Office (CCSO). PSOF ¶¶37-

38.[1] He worked at OPR as an Assistant Director for six to seven years, and then at the Electronic

Monitoring Unit (EM) as an Assistant Chief. PSOF ¶38.

Carmen Ruffin (Ruffin) was promoted to Executive Director of the EM Unit on February

14, 2021, and she started targeting older, more senior officers in order to move up younger officers.

DSOF ¶¶3, 80. Gaines was a victim of this scheme. During a meeting with Gaines on August 13,

2019, Ruffin mentioned his age multiple times, stating, that "you're old enough to know better," she

questioned him about his retirement, why he was still working with the CCSO when he had a

pension, and inquired why he was working after retiring from the CPD when it did not further his

career.  PSOF ¶1. Ruffin explained to Gaines that her agenda was to promote younger people.

---

[1] Throughout this Memorandum, "DSOF" refers to Defendant's Rule 56 Statement and Plaintiff's
Responses. "PSOF" refers to Plaintiff's Additional Statement of Facts.

PSOF at ¶1. The day after this meeting, Ruffin filed the OPR Complaint Register (CR) against Gaines on August 14, 2019 for an allegation that he went to a doctor's office on duty. PSOF ¶8.

OPR conducted a perfunctory investigation that almost exclusively relied on information provided by Ruffin. Investigator Eyman Zabadneh (Zabadneh) interviewed Ruffin. PSOF at ¶9. He interviewed Lt. Collins because she worked side by side with Ruffin. PSOF at ¶10. He interviewed no other witnesses, except for Folker, Messina, and Logan who gave information having no relevance. PSOF at ¶17. Zabadneh collected GPS records and Daily Activity Reports to include in his report – provided by or that he was directed to by Ruffin. PSOF ¶¶14, 16. Zabadneh never interviewed Gaines, never investigated the nature of Gaines' visit to the doctor's office because he thought it would violate HIPAA, did not investigate whether Gaines might have done that on a break, and uncovered no evidence that Gaines was unavailable to his subordinates if they needed him. PSOF ¶¶11-13. The OPR investigation attempted to confirm that Gaines visited a boathouse on duty, but Zabadneh admitted that nothing about the GPS records show that Gaines was somewhere he was not supposed to be. PSOF ¶15.

For his part, Gaines confirmed that his job included being out in the field and available as needed for his subordinates, to be responsive to their calls, and to delegate work and monitor officer movement, which was done on the radio and phone and officers would call him if needed. PSOF ¶32. Gaines was available to be responsive to his subordinates even for the 15 minutes he stopped at the doctor's office to get CCSO-requested records. PSOF ¶32. He stated he was always available on his assignment that day, and that he was not gone for five hours but stopped at the doctor's office for 10-15 minutes and even then was available for his subordinates. PSOF ¶32. The GPS Records in the OPR file show that Gaines was, in fact, driving all over Cook County from May 31 to August 29, 2019 – that he was doing his job. PSOF ¶35. The OPR file made no findings Gaines did not

complete paperwork, and contained 17 examples of Daily Activity Reports that Gaines signed. PSOF ¶35.

Following OPR's perfunctory investigation, the file went to Adriana Morales (Morales) for Command Channel Review (CCR). She did not do any investigation into the allegations, only relied on documents in the file (largely material supplied by Ruffin), and she never interviewed Gaines or anyone. PSOF ¶¶20-22. Ruffin discussed the case with Morales and it was Morales who advised Ruffin to file at OPR. PSOF ¶24. Ultimately, as discussed below, Morales is Ruffin's "cat's paw."

**Seven** witnesses, variously, confirmed that Ruffin made age-derogatory comments, targeted older officers, favored younger officers, and went after older officers with trumped up allegations. PSOF ¶¶1-6, 27-31. David Walker retired at the age of 57 from the CCSO in July 2021 and made the decision to do so because Ruffin was targeting older, high-ranking officers and making them feel forced to retire. PSOF ¶4. It was obvious to Walker that Ruffin liked younger officers who would carry out her orders, and that she favored younger officers by giving them better tasks and overtime opportunities. PSOF ¶4. Ruffin would allow younger officers to work in the office, not on the street, would promote them to Sgt. and Lt., and give them better OT opportunities. PSOF ¶4. Ruffin would hire younger officers to replace the older ones who Ruffin forced to retire. PSOF ¶4. Walker was in the elevator with Ruffin one day and she asked him "how long are you going to be here, to which Walker responded that he was "going on 30 years and wanted to work a couple more," which made Ruffin visibly upset and she frowned. PSOF ¶5. Ruffin subjected Walker to three write-ups for bogus infractions that came from Ruffin. PSOF ¶6. The third one was the tipping point for Walker, who decided to retire because of it. PSOF ¶6.

Robert Brown worked with Gaines at the EM Unit and retired at the age of 58 because Ruffin was targeting older, higher-ranking officers. PSOF ¶27. Ruffin's poor treatment of older officers was obvious to Brown, and it was obvious to him that she liked the younger staff who

would carry out her demands. PSOF ¶27. Ruffin made comments to Brown such as, "I thought you were leaving," which was in reference to his age and retirement. PSOF ¶27. Brown heard Ruffin make comments such as "4 down, 5 more to go" when there was an officer retirement, referring to older officers she was hoping would retire. PSOF ¶27. Ruffin's mode of attack was to punish older officers with write-ups and escalation of punishment. PSOF ¶27. Older, senior officers would avoid her. PSOF ¶27. According to Brown, other officers in the EM Unit felt the same way and felt forced to retire because they felt Ruffin was pushing them out. PSOF ¶27.

Fernando Clark worked in the EM Unit with Gaines and retired at 62 because Ruffin was making the work environment unfair to older officers. PSOF ¶28. The work environment under Ruffin was not conductive to officers with seniority. PSOF ¶28. Ruffin favored younger officers by promoting them quickly and did not give the same opportunities to older officers. PSOF ¶28.

Marcus Jackson met Gaines at the EM Unit and Gaines was his supervisor; he retired at 60 years old because Ruffin was targeting older, higher-ranking officers and making them feel forced to retire. PSOF ¶29. Jackson heard Ruffin remark at a Roll Call that "she didn't care for people who had over 25 years of experience or those with seniority." PSOF ¶29. Ruffin once asked Jackson "how many years [he had] until retirement." PSOF ¶29. Within about six months of Ruffin's start, there were about 10 older employees who retired because of Ruffin's attitude toward them. PSOF ¶29. By the end of her first year, around 15 – 20 officers in the EM Unit retired. PSOF ¶29. Jackson had been promised a promotion on his return from Iraq and Iran, but when returned Ruffin made him feel ostracized. PSOF ¶29.

Rotonda Malone-Cole met Gaines in the EM Unit and he was her superior. PSOF ¶30. Malone-Cole once heard Ruffin address state about older officers "what are these people doing here, what are we paying them to do here." PSOF ¶30. Malone-Cole witnessed Ruffin be rude and inconsiderate to older officers. PSOF ¶30. Malone-Cole confirms there were five to six older

officers who felt forced to leave since Ruffin was put in charge. PSOF ¶30. Cedric Logan, who worked under Gaines in the EM Unit until he retired in October 2020, confirmed that "[t]here was obvious favoritism by [Ruffin] towards younger officers." PSOF ¶31. He observed her send older officers out to do street work even though there were younger officers available, and he stated about Ruffin that "if they couldn't work the field, then maybe they were too old and needed to retire." PSOF ¶31.

During a second conversation between Gaines and Ruffin, Gaines recommended that Brown, Faulkner, Messina, Jackson, and Walker be promoted. PSOF ¶2. Ruffin responded that she did not know how much longer these officers would be around, which he took to be a reference to their age or proximity to retirement. PSOF ¶2. She used younger subordinates to be part of training and in promotions. PSOF ¶2. During a third conversation, Gaines was at Roll Call with Ruffin and she stated to an officer who was present that she (Ruffin) had done more in the Unit in three months than that officer had done in 24 or 25 years of experience. PSOF ¶3.

Gaines was 69 years old at the time of his termination. DSOF ¶1. He files this suit because his termination was a phony excuse to terminate him due to his age, Ruffin orchestrated the entire termination, and she was Morales cat's paw and got what she wanted by getting Gaines fired so she could accomplish her goal of moving younger officers up.

## LEGAL STANDARD

Summary judgment is appropriate where there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Even following the *Celotex* Trilogy, the Seventh Circuit maintains that a heightened level of scrutiny should be applied on a motion for summary judgment in an employment discrimination case because issues of intent and credibility are involved. *See, e.g.*, *Webb v. Clyde L. Choate Mental Health and Dev. Ctr.*, 230 F.3d 991, 997 (7th Cir. 2000); *Talanda v. KFC Nat'l*

*Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998); *EEOC v. RJB Props., Inc.*, 857 F. Supp. 2d 727, 739 (N.D. Ill. 2012). Plaintiff is not required to prove his case at summary judgment, instead, he must come forward with some facts that could arguably entitle him to judgment. In addition, the burden of proof in such cases is often described as *de minimis. Belour v. Adapt of Ill., Inc.*, 460 F.Supp.2d 867, 873 (N.D. Ill. 2006). Courts neither weigh the evidence nor evaluate credibility, but view the facts and the reasonable inferences flowing from them in the light most favorable to the nonmovant. *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1097 (S.D. Ind. 2008).

A plaintiff can prove discrimination under the ADEA by presenting direct or circumstantial evidence that an employer took an adverse job action against him because of his age or "by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker'." *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060–61 (7th Cir.2003).

## **ARGUMENT**

### I. **DEFENDANTS' RULE 56 STATEMENT CONTAINS CITATIONS TO MARCIA OVIEDO'S AFFIDAVIT THAT SHOULD BE STRICKEN.**

Marcia Oviedo was never disclosed as a witness in Defendants' Rule 26 disclosures, interrogatories, or anywhere. *See* Exhibits 2 at ¶A, 3, 4, 5, 20-26. Plaintiff's interrogatories included requests to list all persons with knowledge of the allegations and/or that might be called as a witness. *See* Exhibit 23 at ¶¶3, 4, 5, 8, 9, 12. The Oviedo's Affidavit should be stricken and the statements of fact purportedly supported by it should be disregarded. *See Segerdahl Corp. v. Ferruzza*, 17 C 3015, 2022 WL 21295383, at *2 (N.D. Ill. Sept. 20, 2022) (J. Kennelly) (striking declaration of undisclosed witness); *Johnson v. Statewide Inv. Servs., Inc.*, No. 20 C 1514, 2021 WL 825653, at *10 (N.D. Ill. Mar. 4, 2021); *Ty Inc. v. Softbelly's Inc.*, No. 00 C 5230, 2006 WL 5111124, at *6 (N.D. Ill. Apr. 7, 2006); *Donohoe v. Corpak Medsystems, Inc.*, 17 C 3228, 2019 WL 414674, *1, FN 1 (N.D. Ill. Feb. 1, 2019). This applies to Defendants' Statement of Fact Paragraphs 9, 32, 66, 72, 73, 74, 76, 77, and 78.

## II. **PLAINTIFF'S COMPLAINT WAS TIMELY FILED.**

Defendants argue that Title VII and IHRA require "state and local agencies [be] given an initial deferral period of at least sixty days to investigate a charge of discrimination" before a plaintiff may sue, and that Plaintiff filed his complaint before the sixty-period elapsed. Dkt. 109 at 8-9. This argument was rejected by this Court at the pleadings stage. *See* Dkt. 40 at 2. The Court reasoned that this argument lacks merit because "[t]his action has been stayed, over no objection from the Sheriff, while administrative proceedings played out, which is a permissible way to proceed." Dkt. 40 at 2 (citing *Palka v. City of Chicago*, 662 F.3d 428, 438 (7th Cir. 2011)). Defendants make no argument as to why this Court was wrong in its first ruling, and the cases cited, *Zugay v. Progressive Care, S.C.*, 180 F.3d 901, 902 (7th Cir. 1999), and *EEOC v. Commercial Office Products Co.*, 486 U.S. 107, 117 (1988), did not result in a complaint being dismissed for failure to comply with the 60 period. Indeed, the federal regulations allow Plaintiff to request a right-to-sue letter, he did so consistent with those regulations, and nothing stops the EEOC from declining to issue it because of the 60-day period but, here, it did not do so and that should not bar Plaintiff from suing on his claims. Dkt. 31 at 2-6.

## III. **PLAINTIFF'S ADEA/IHRA AGE DISCRIMINATION CLAIMS SURVIVE.**

### a. Gaines Met The CCSO's Legitimate Expectations.

Morales confirmed she never disciplined or counseled Gaines for any reason. PSOF ¶7. There is no instance of prior discipline listed in the OPR file and Gaines denied receiving any prior discipline at the CCSO. PSOF ¶26. There is a dispute of fact between Ruffin and Gaines as to whether he was doing what his position required, and he was clear that he was. PSOF ¶29. Plaintiff's job included being out in the field and available as needed for his subordinates, to be responsive to their calls, and to delegate work and monitor officer movement, which was done on the radio and phone and officers would call him if needed. PSOF ¶29. Gaines stated he was available to be

responsive to his subordinates even for the 15 minutes he stopped at the doctor's office to pick CCSO requested records. PSOF ¶29.

Nothing in the OPR file shows Gaines was not meeting Ruffin's expectations – for example, while Ruffin did send an email to Gaines on August 7, 2019, this email actually is "laying out" expectations for him as well as providing training. Indeed, the GPS records show Gaines was driving all over Cook County in the period of 5/31/19 to 8/29/19. PSOF ¶34. Seventeen Daily Activity Report in the file bear Gaines' signature. PSOF ¶35. OPR made no findings Gaines was not completing required paperwork. PSOF ¶36. While the OPR file attempted to make findings that Gaines was visiting a boathouse during work hours, in fact, when pressed on this Inv. Zabadneh could not even locate the boathouse in the GPS records, and he – crucially – admitted that the GPS records do not show that Gaines was somewhere he was not supposed to be. PSOF ¶15.

      b. <u>Gaines Was Subjected To A Material Adverse Action.</u>

Defendants argue Ruffin's filing of the CR was not a materially adverse action, citing *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) and *Barton v. Zimmer*, 662 F.3d 448, 453-54 (7th Cir. 2011). Dkt. 109 at 12. However, Plaintiff pleads Ruffin orchestrated his termination by filing a CR with trumped up allegations that resulted in Morales, acting on Ruffin's cat's paw, terminating Gaines because of his age. Dkt. 20 ¶¶49, 54, 63, 79. Termination is indisputably a material adverse action. *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 889 (7th Cir. 2016); *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Ghiles v. City of Chicago Heights*, 2018 WL 1377909 at *4 (termination a material adverse action); *Principe v. Vill. of Melrose Park*, 2020 WL 4815908 at *7 (N.D. Ill. 2022). Accordingly, Plaintiff's claims survive because based on his termination.

      c. <u>Ruffin's Age-Based Statements And Pattern Of Targeting Older Workers.</u>

Plaintiff may prove his case with direct and circumstantial evidence. As to circumstantial evidence, this may "consist[] of suspicious timing, ambiguous statements oral or written, behavior

toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn." *Giacoletto v. Amax Zinc Co.,* 954 F.2d 424 (7th Cir. 1992); *Holland v. Jefferson National Life Ins. Co.,* 883 F.2d 1307, 1314–15 (7th Cir. 1989). "Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment." *American Nurses' Ass'n v. Illinois,* 783 F.2d 716, 728 (7th Cir. 1986). "Each type of evidence is sufficient by itself . . . or they can be used together." *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 736 (7th Cir. 1994)

　　"In order to illustrate the idea that the circumstantial evidence, taken as a whole, must permit that inference, we have used the metaphor of a mosaic whose individual tiles add up to a complete picture." *See Wright v. Southland Corp.,* 187 F.3d 1287, 1290–92 (11th Cir. 1999); *Troupe v. May Dep't Stores Co.,* 20 F.3d 734, 737 (7th Cir. 1994). "All these cases mean is that the circumstantial evidence must be strong enough, taken as a whole, to allow the trier of fact to draw the necessary inference. Typical kinds of evidence used for this purpose include '(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action.'" *Diaz,* 653 F.3d at 587. "If the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Morgan v. SVT, LLC,* 724 F.3d 990, 995–96 (7th Cir. 2013).

Direct statements may constitute evidence of age-based animus. *See Wichmann v. Bd. of Trs. Of Southern Ill. Univ.*, 180 F.3d 791, 801 (7th Cir. 1999). Indeed, this judicial district has held that "'an employer statement that reveals hostility to older workers' may constitute direct evidence of discrimination. . ." *Id.* With respect to such statements, remark[s] [or] other evidence that reflect[s] a propensity by the decisionmaker to evaluate employees based on illegal criteria will suffice as direct evidence of discrimination even if the evidence stops short of a virtual admission of illegality. *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999) (*quoting Venters v. City of Delphi,* 123 F.3d 956, 973 (7th Cir.1997)); *see also Sheehan v. Donlen Corp.,* 173 F.3d 1039, 1044–45 (7th Cir.1999).

In this case, during a meeting August 2019, Ruffin made multiple age-based comments to Gaines, including that he is "old enough to know better," she questioned him about retirement, she asked him why he was still working at the CCSO when he had a pension, and she inquired why he was still working after retiring from CPD when it would not further his career. PSOF ¶1. She explained to Gaines during this meeting that her agenda was to promote younger people. PSOF ¶1. During another conversation with Gaines, Gaines recommended that Brown, Faulkner, Messina, Jackson, and Walker should be promoted. PSOF ¶2. Ruffin responded that she did not know how much longer these officers would be around, which he took to be a reference to their age. PSOF ¶2. Gaines reported that Ruffin would consistently use younger subordinates in training and promotions. PSOF ¶2. Gaines overheard Ruffin make an age-based comment at Roll Call where she stated that she (Ruffin) had done more in the Unit in three months than that officer had done in 24 or 25 years of experience. PSOF ¶3. Walker confirmed hearing this statement too, except he heard her say she has "done more in six months than you have done in your 25-year career." PSOF ¶3.

Walker, too, states that he made the decision to do so because Ruffin was targeting older, high-ranking officers and making them feel forced to retire. PSOF ¶4. It was obvious to Walker that Ruffin liked younger officers who would carry out her orders, and that she favored younger officers

10

by giving them better tasks and OT opportunities. PSOF ¶4. Ruffin would allow younger officers to work in the office, not on the street, would promote them to sergeant and lieutenant, and give them better overtime opportunities. PSOF ¶4. Ruffin would hire younger officers to replace the older ones who Ruffin forced to retire. PSOF ¶4. Walker was in the elevator with Ruffin one day and she asked him "how long are you going to be here," to which Walker responded that he was "going on 30 years and wanted to work a couple more," which made Ruffin visibly upset and she frowned. PSOF ¶5. Ruffin subjected Walker to three write-ups for bogus infractions. PSOF ¶6. The third one was the tipping point for Walker, who then decided to retire. PSOF ¶6.

Robert Brown worked with Gaines at the EM Unit and retired at the age of 58 because Ruffin was targeting older, higher-ranking officers. PSOF ¶27. Ruffin's poor treatment of older officers was obvious to Brown, and it was obvious to him that she liked the younger staff who would carry out her demands. PSOF ¶27. Ruffin made comments to Brown such as, "I thought you were leaving," which was in reference to his age and retirement. PSOF ¶27. Brown heard Ruffin make comments such as "4 down, 5 more to go" when there was an officer retirement, referring to older officers she was hoping would retire. PSOF ¶27. Ruffin's mode of attack was to punish older officers with write-ups and escalation of punishment. PSOF ¶27. Older, senior officers would avoid her. PSOF ¶27. According to Brown, other officers in the EM Unit felt the same way and felt forced to retire because they felt Ruffin was pushing them out. PSOF ¶27.

Fernando Clark worked in the EM Unit with Gaines and retired at 62 because Ruffin was making the work environment unfair to older offices. PSOF ¶28. The work environment under Ruffin was not conducive to longevity or officers with seniority. PSOF ¶28. Ruffin favored younger officers by promoting them quickly and did not give the same opportunities to older officers. PSOF ¶28. Marcus Jackson met Gaines at the EM Unit and Gaines was his supervisor; he retired at 60 years old because Ruffin was targeting older, higher-ranking officers and making them feel forced to

11

retire. PSOF ¶29. Jackson heard Ruffin remark at a Roll Call that "she didn't care for people who had over 25 years of experience or those with seniority." PSOF ¶29. On one occasion, Ruffin asked Jackson "how many years [he had] until retirement." PSOF ¶29. Within about six months of Ruffin's start, there were about 10 older employees who retired because of Ruffin's attitude toward them. PSOF ¶29. By the end of her first year, around 15 – 20 officers in the EM Unit had retired. PSOF ¶29. Jackson had been promoted a promotion on his return from Iraq and Iran, but when returned Ruffin was in the Unit and made him feel ostracized instead. PSOF ¶29.

Rotonda Malone-Cole met Gaines in the EM Unit and he was her superior. PSOF ¶30. Malone-Cole once heard Ruffin address state about older officers "what are these people doing here, what are we paying them to do here." PSOF ¶30. Malone-Cole witnessed Ruffin be rude and inconsiderate to older officers. PSOF ¶30. Malone-Cole confirms there were five to six older officers who felt forced to leave since Ruffin was put in charge. PSOF ¶30. Cedric Logan, who worked under Gaines in the EM Unit until he retired in October 2020, confirmed that "[t]here was obvious favoritism by [Ruffin] towards younger officers." PSOF ¶31. He observed her to send older officers out to do street work even though there were younger officers available, and he stated about Ruffin that "if they couldn't work the field, then maybe they were too old and needed to retire." PSOF ¶31.

The foregoing direct statements and pattern evidence show Ruffin was motivated by age-based animus in filing the CR and providing evidence to Zabadneh in the investigation. While Morales made the ultimate decision to terminate Gaines, as will be seen, she was Ruffin's cat's paw.

d. Suspicious Timing Supports Plaintiff's Claims; OPR References Gaines' Pending Retirement.

In addition to pattern evidence and statements, suspicious timing supports an inference of discriminatory animus by Ruffin. *See Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012). It is undisputed that Ruffin filed the CR on 8/14/19, and in the CR she states that her in-office

conversation with Gaines was on 8/13/19 – the same date Gaines says she made the comments to him. PSOF ¶¶1, 8.

Another suspicious piece of circumstantial evidence is that the OPR file specifically references Gaines' age, stating, "OPR also notes that Gaines was due to retire in November of 2019." Ex. 6, CCSO Gaines 187. There is no discernible reason for this age-based statement to be in the OPR report. The fact that this completely irrelevant factor is included in the Report also points to age being considered – why else was this fact included in the Report? It proves nothing and, yet, is put on the FINDINGS page containing all of OPR's findings, as if they wanted to highlight it.

     e. <u>Defendants' Comparator Arguments Fails Because Plaintiff Need Not Adduce Comparators To Prove Discrimination.</u>

Defendants argue that Plaintiff has not identified any similarly situated employees who were treated more favorably, and, they claim, he must show comparators who dealt with the same supervisor, were subjected to the same standards, and engaged in similar conduct. Dkt. 109 at 12-13. This argument is wrong for two reasons: (1) it depends upon the framework of *McDonnell-Douglas*, which is not the only way to prove discrimination, and (2) Plaintiff's witnesses meet those standards anyway.

First, a plaintiff need not prove a specific similarly-situated comparable. *See, e.g.*, *Riley v. Vilsack*, 665 F. Supp. 2d 994, 1004 (W.D. Wis. 2009); *Garth v. City Of Chicago*, 2009 WL 3229627 *5 (N.D. Ill. Oct. 2, 2009); *Hu v. City of Chicago*, 2009 WL 635522 *2 (N.D. Ill. March 12, 2009). The *McDonnell-Douglas* framework is one way to prove discrimination, but not the only way, and the ultimate question in these cases is "whether the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination." *Bullock v. Kelly Construction of Indiana*, 2021 WL 534753 at *2 (N.D. Ind. 2021). As the Court recognized in *Bullock*:

"The burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), may assist a plaintiff in convincing a court that the evidence permits such a conclusion. *David*, 846 F.3d at 224. This framework may be useful as "a means of organizing, presenting, and assessing

circumstantial evidence in frequently recurring factual patterns found in discrimination cases." *Id.* However, the *McDonnell Douglas* analysis is "not the only way to assess circumstantial evidence of discrimination." *Id.* The court must ultimately be guided by the test articulated in *Oritz*, and must determine whether "the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination[.]" *Id.; see also Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018)."

*Bullock v. Kelly Constr. of Indiana*, 18 CV 216, 2021 WL 534753, at \*2 (N.D. Ind. Feb. 12, 2021). Accordingly, Defendants' argument fails because Plaintiff has put forth the evidence discussed above that (1) Ruffin has made numerous direct statements, including to Plaintiff, that demonstrate anti-age based animus, and (2) Gaines has put forth sworn Affidavits from other older former officers (Walker, Jackson, Brown, Clark, Malone-Cole, Logan) in the EM Unit, all of whom confirm both Ruffin's age-based comments and age-based preferences for younger officers. This is all enough "to support a jury verdict of intentional discrimination."

Second, even though Gaines does not need to fit Walker, Jackson, Brown, Clark, Malone-Cole, Logan into a comparative framework because he is just using them as "pattern" and "example" evidence of other witnesses to Ruffin's age discriminatory statements and tactics, they still are comparable to Gaines. They all worked in EM, reported to Ruffin, and were subject to the same standards. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406 (7th Cir. 2007) (endorsing a big picture, common sense perspective on comparators).

    f.   Morales is Ruffin's Cat's Paw.

This is a cat's paw case. The cat's paw theory of liability typically takes the following form: a biased subordinate, who lacks decision-making power, "uses a formal decision maker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014); *see also Wightman v. Wauconda Twp. Hwy. Dep't*, 19-CV-2344, 2021 WL 534668, at \*5 (N.D. Ill. Feb. 12, 2021). In a cat's paw case, "if a supervisor performs an act motivated by [illicit] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable . .

." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011). Our judicial district has held that "[u]nder the cat's paw theory, the appropriate inquiry is whether the biased [supervisor] had influence over the decision to terminate [the plaintiff], and, if so, how much influence she had. . ." *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 383 (7th Cir. 2011). However, "the chain of causation can be broken if the unbiased decisionmaker conducts a meaningful and independent investigation of the information being supplied by the biased employee." *Id.* at 383. In *Schandelmeier-Bartels*, the Court held that where there was ample evidence that an investigation into the plaintiff's conduct was not independent of the biased decisionmaker's input, a jury could conclude that the biased decisionmaker was the decisive influence on the termination. *Id.* at 383-84.

In this case, OPR conducted a perfunctory investigation that was based entirely on Ruffin's CR and what she provided to OPR, except for some interviews of other witnesses who gave no relevant information. Ruffin filed the CR against Gaines, Zabadneh interviewed her and included her statement in the file. PSOF ¶¶8, 9. Zabadneh interviewed Collins because she worked side-by-side with Ruffin. PSOF ¶10. Zabadneh never interviewed Gaines and never investigated how breaks worked in the Unit, never learned whether Gaines was on a break during any stop at a doctor's office. PSOF ¶12. In fact, Zabadneh did nothing to investigate even the nature of any alleged stop at a doctor's office because he thought it would violate HIPAA. PSOF ¶11. Zabadneh could not locate any boathouse belonging to Gaines in the GPS records when he was asked to do so. PSOF ¶15. Zabadneh admitted that the GPS records do not show that Gaines was somewhere he was not supposed to be. PSOF ¶15. Despite their inconclusiveness, Ruffin pointed Zabadneh in the direction of obtaining GPS records. PSOF ¶14. Ruffin, too, gave Zabadneh the Daily Activity Reports for his investigation. PSOF ¶16. The only witnesses other than Ruffin and Collins who Zabadneh interviewed were Folker, Messina, and Logan, none of whom gave one shred of relevant information about Gaines – in fact, they largely concern Gaines' injury. PSOF ¶17. Logan did

15

mention Gaines had a boathouse, but he denied that Gaines ever told him Gaines visited a boathouse during work hours. PSOF ¶17. Based on this evidence, Zabadneh's "investigation" was not independent of Ruffin as, indeed, it is nearly entirely based on his interview with Ruffin, the GPS records suggested by Ruffin, the Daily Activity Reports provided by Ruffin, and his interview with Collins who worked side by side with Ruffin.

Next, Morales merely did a perfunctory review of Zabadneh's investigation. She never interviewed Gaines. PSOF ¶20. She never interviewed any witnesses. PSOF ¶20. She relied only on the documents compiled by Zabadneh and did no independent investigation whatsoever. PSOF ¶21. She determined termination was warranted based on this perfunctory review. PSOF ¶10. Indeed, Morales was even wrong in her assessment of the file because she states that the OPR file showed he was taking care of personal business at work and visited his boat dock a few times. PSOF ¶23. Yet, Zabadneh admitted that he did not investigate any alleged stop at a doctor's office, instead merely relying on what Ruffin and Collins told him. As far as the GPS records, Zabadneh admitted they do not show Gaines being somewhere he should not be – so, Morales' interpretation of the OPR file is not correct, and it never shows Gaines was at a boathouse.

To counter this, Defendants argue Morales "was not wholly dependent on a single source of information" and "conducted her own review," and that she came to her own conclusion and "did not rely on information from Ruffin or even speak with her." Dkt. 109 at 16. These points are disputed. Plaintiff has shown Morales did no more than a ceremonial review of the file. PSOF ¶¶20-23. Most the OPR file is information from Ruffin. PSOF ¶¶8 (CR), 9 (Ruffin interview), 10 (Collins interview, but she worked side by side with Ruffin), 14 (GPS records from Ruffin), 16 (Daily Activity Reports from Ruffin), and 17 (other witness interviews are totally irrelevant). It is disputed that the OPR allegations against Gaines should even amount to termination, Morales herself admitted not all time theft cases are termination. PSOF ¶25. Gaines had no prior discipline in his

CCSO career. PSOF ¶26. It is also not true that Ruffin and Morales did not speak, as Ruffin called Morales before Morales conducted the CCR to report that Gaines had gone to the doctor's office on duty. PSOF ¶24. In the cases cited by Defendant, there was no evidence whatsoever that a non-decisionmaker attempted to influence a decisionmaker. Not so here – Ruffin provided nearly all the relevant information in the OPR report, had spoken to Morales about Gaines by the time the file hit Morales' desk, and all Morales did was stamp it a termination with no independent investigation.

In summary, the OPR investigation was (1) started by Ruffin, (2) Ruffin provided the key pieces of "evidence" in it to Zabadneh (GPS records/Daily Activity Reports/Ruffin interview), (3) no one else provided relevant information in the file, (4) Gaines was not interviewed, and (5) Morales conducted a perfunctory review of the file. This is a "paragon" of a cat's paw case.

g.   Defendants' Claims About Stray Remarks And Lack Of Authority Fail.

Defendants argue there is no evidence Ruffin favored younger workers except for speculation, and they attempt to adduce reasons for the affidavits and to paint these witnesses' testimony as speculation. Dkt. 109 at 13-14. They claim that Ruffin's statements to Gaines about his retirement are "stray remarks" and were not made by the decisionmaker, Morales. Dkt. 109 at 14.

These arguments demonstrate why this case cannot be decided on summary judgment: Ruffin claims she did not have age-based animus and denies what Walker, Jackson, Brown, Clark, Malone-Cole, Logan, and Gaines claim about her age-based tactics and statements. However, against that, Walker, Jackson, Brown, Clark, Malone-Cole, Logan, and Gaines all state otherwise and aver that Ruffin created an environment permeated by age-based preferences, caused older officers to retire as a result, made multiple age-based comments to multiple people, and favored younger officers. For the Sheriff's argument about this to prevail, this Court would have to discount the affidavits of six other people who worked in the EM Unit, in addition to Gaines' testimony. Not all these people are lying or unduly biased or speculating as the Defendants' intimate – indeed, how

17

many discrimination cases in this Courthouse have <u>seven witnesses</u> all confirming a discriminatory environment with specific examples and instances of it all coming from the same supervisor (Ruffin) as the witnesses' Affidavits confirm? PSOF ¶¶4, 27-31.

Too, Defendants argue that Ruffin "does not have authority to hire, promote, transfer, or fire." Dkt. 109 at 14. Plaintiff disputes this because the Affidavits of Walker, Jackson, Brown, Clark, Malone-Cole, Logan aver that Ruffin did have such authority and was doing these things. PSOF ¶6. The exception may be firing, but that is why Ruffin set up Gaines to be fired by Morales.

Finally, Ruffin's comments were not "stray remarks." *Wrolstad v. Cuna Mut. Ins. Soc.*, 911 F.3d 450, 455 (7th Cir. 2018), cited by Defendant, involved the comment that a candidate would "inevitably stay with the company for many years to come," which the Court held was only highlighting the potential for longevity, and was not age-based when reviewed in context. By contrast, Ruffin's comments have no contextual justification, were repeated and numerous, were confirmed by multiple witnesses, and this is not a case of a "stray remark." Plaintiff has already recounted all of the other age-based remarks she made showing that Ruffin was habitually making age-based comments. PSOF ¶¶1-5, 27-31.

The Court's standard as to discriminatory remarks is to assess "the nature of the alleged discriminatory remarks, their relationship to the employment decision in question, the nature of the stated reason for the employer's action, and the existence of other evidence calling that reason into doubt." *Huff v. UARCO, Inc.*, 122 F.3d 374, 385 (7th Cir. 1997). Ruffin's numerous confirmed remarks to multiple older officers, plus the fact that she filed the CR against Gaines within one day of her conversation with him where she referenced his retirement, show that Ruffin's statements are not "stray remarks," but evidence of illegal animus. PSOF ¶¶1, 8. Therefore, not only are Ruffin's comments numerous, confirmed, not contextually justified, but they were made within one day of her CR, making them highly relevant to the termination in question.

18

## IV. <u>PLAINTIFF'S 1983 CLAIM AGAINST RUFFIN SURVIVES.</u>

### a. <u>Plaintiff Meets His Burden.</u>

Because Plaintiff has presented sufficient evidence of genuine issues on his ADEA and IHRA claims, he has also done so on his 42 U.S.C. § 1983 claim. *See Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (*Smith*). Plaintiff has discussed all the evidence of Ruffin's discriminatory animus in the prior section, and incorporates those arguments here. Defendants' Motion should be denied on this basis.

### b. <u>Plaintiff Suffered A Constitutional Deprivation.</u>

Defendants argue there is no evidence Ruffin committed a constitutional deprivation, and that her filing of the CR is not one. Dkt. 109 at 17-18. Terminations are constitutional deprivations. *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Ghiles v. City of Chicago Heights*, 2018 WL 1377909 at *4 (termination a material adverse action); *Principe v. Vill. of Melrose Park*, 2020 WL 4815908 at *7 (N.D. Ill. 2022). The Seventh Circuit has held that a subordinate with impermissible animus may be found individually liable for "causing the employer to retaliate against another employee" under § 1983. *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012), *overruled on other grounds by Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). ("It logically follows that an individual can be liable under § 1981 for retaliatory conduct that would expose her employer to liability"). Plaintiff incorporates his arguments as to this cat's paw theory form the prior section.

### c. <u>Ruffin Is Not Protected By Qualified Immunity.</u>

Ruffin is not entitled to qualified immunity because it was clearly established that she may be held liable for "causing the employer to retaliate against another employee" under § 1983. *Smith*, 681 F.3d 888, 899 (7th Cir. 2012). It is well-established that age discrimination is prohibited under the Fourteenth Amendment. *Levin v. Madigan*, 692 F.3d 607, 620-21 (7th Cir. 2012). Indeed, in *Levin*, our Seventh Circuit denied that qualified immunity applies to an age discrimination claim brought under

the Fourteenth Amendment. *Id.* at 622. *Levin* settled this question in 2012, and the events of this case occurred since 2019. Defendants' qualified immunity argument should be denied.

**V.**     **COOK COUNTY IS NOT ENTITLED TO SUMMARY JUDGMENT.**

Plaintiff presented sufficient evidence to overcome the Motion as to all counts and the indemnification against Cook County stands.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion should be denied in its entirety.

Respectfully submitted,

RONALD GAINES

*/s/ Cass T. Casper*
By:_____
Cass T. Casper, Esq.
His Attorney

*Cass T. Casper, Esq.*
DISPARTI LAW GROUP, P.A.
121 W. Wacker Drive, Suite 2300
Chicago, Illinois 60601
P: (312) 506-5511 ext. 331
E: ccasper@dispartilaw.com

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on December 11, 2023, he caused to be served the foregoing Plaintiff's Response to the Motion for Summary Judgment on all counsel of record for Defendants via this Court's CM/ECF electronic filing system, and that all such counsels are registered e-filers.

*/s/ Cass T. Casper*

_____